UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Susan E. Bica,
        Claimant

        v.                                  Civil No. 09-cv-014-SM
                                            Opinion No. 2009 DNH 171
Michael Astrue, Commissioner
of Social Security,
        Respondent

## O R D E R

        Pursuant to 42 U.S.C. § 405(g), Susan Bica moves for an
order reversing the Commissioner's decision to deny her
application for Social Security disability insurance benefits
under Title II of the Social Security Act, 42 U.S.C. § 423.  In
the alternative, she asks the court to remand the case.  The
Commissioner moves for an order affirming his decision.  For the
reasons given, the matter is remanded to the Administrative Law
Judge ("ALJ") for further proceedings consistent with this
opinion.


### Standard of Review

        The applicable standard of review in this case provides, in
pertinent part:

        The [district] court shall have power to enter, upon
        the pleadings and transcript of the record, a judgment
        affirming, modifying, or reversing the decision of the
        Commissioner of Social Security, with or without

remanding the cause for a rehearing.  The findings of
the Commissioner of Social Security as to any fact, if
supported by substantial evidence, shall be conclusive
. . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of

social security disability benefits unless 'the [Commissioner]

has committed a legal or factual error in evaluating a particular

claim.' "  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st

Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885

(1989)).


## Background

The parties have submitted a Joint Statement of Material

Facts (document no. 13).  That statement is part of the court's

record, and the factual background will be summarized here only

to the extent necessary to provide context for this decision.


For purposes of establishing eligibility for Social Security

disability insurance benefits, Bica's last date insured was June

30, 2003.  On September 19, 2006, she applied for disability

insurance benefits, alleging an onset date of June 29, 2003,

which was the last time she engaged in substantial gainful

activity.  She claimed she was unable to work due to a ruptured

disc, anxiety, depression, and headaches.  As Bica suffered her

ruptured disc in 2004, after her last date insured, all agree
that she is not entitled to benefits based on that impairment.

Starting in May of 2001 and continuing through 2006, Bica
was treated as an outpatient at the New England Center for
Comprehensive Counseling Services by Dr. Priscilla Cusi, a
psychiatrist.[1] Her chief complaints were depression and anxiety.
Dr. Cusi initially diagnosed Bica as being bipolar, but
subsequently characterized her as having a "mood disorder." Dr.
Cusi provided therapy and prescribed a variety of medications.
In April and May of 2003, Bica was examined by Nurse Practitioner
James Harris. In April she complained of anxiety, and in May she
complained of headaches. As noted, she was last insured on June
30, 2003.

Between the date she was last insured and the time she
applied for disability insurance benefits over three years later,
Bica was treated extensively for her mood disorder and headaches.
For her mood disorder she saw Dr. Cusi and then saw Dr. T.M.
Cadorette of Monadnock Behavioral Health. For her headaches, she
saw a neurologist, Dr. Eugene Lasser, and Sharon Lockwood, PA,
both of Foundation Neurology, as well as Dr. Tatiana Nabioullina.

---

[1] From May of 2001 through June of 2003, Bica saw Dr. Cusi
monthly. From April of 2004 through December of 2006, Bica saw
Dr. Cusi another thirty-four times.

At the time of her application, Bica was taking Lexapro and Trilepta for depression, Lorazopram for anxiety, and Emerge, Nadolol, and Protonix for headaches.

In addition to medical documentation from most of Bica's treating sources, the record includes a "Psychiatric Review Technique" form directed to the period from June 29, 2003, through June 30, 2003;[2] "Mental Residual Functional Capacity Assessment" forms dated November 16, 2007 (by Dr. Cadorette), November 21, 2007 (by Dr. Nadine Dubrule, a treating physician), and December 1, 2007 (by Dr. Susan Vonderheide, a treating psychologist); a June 16, 2008, "Headaches Residual Functional Capacity Questionnaire" completed by PA Lockwood; an independent occupational health consultation assessment dated December 14, 2007;[3] and opinion letters from Dr. Vonderheide dated June 20, and July 30, 2008.[4]

---

[2] That form, completed by medical consultant Dr. Nicholas Kalfas, is all but blank.  The principal notation says: "The only source available is from Dr. Cusi, whose notes are barely legible and which do not provide sufficient information from which to ascertain the claimant's function during the period in question." (Tr. at 296.)

[3] In that assessment, Dr. Barbara O'Dea wrote: "Her [Bica's] psychiatric and neurological difficulties of poor memory, attention and learning difficulties, and low stress tolerance, would make any further efforts at full time work even if modified, very difficult."  (Tr. at 335.)

[4] On June 20, Dr. Vonderheide opined that Bica was "still unable to work either part-time or full-time . . . [and] will

After conducting a hearing at which Bica was represented by counsel, the ALJ issued a decision in which he reported the following relevant findings:

> 3.  Through the date last insured, the claimant had the following severe impairments: a mood disorder and migraine headaches (20 CFR 404.1520(c)).
>
> . . . .
>
> 4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . . .
>
> 5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except for more than semi-skilled tasks.
>
> . . . .
>
> 7.  The claimant was not under a disability as defined in the Social Security Act, <u>at any time from June 29, 2003</u>, the alleged onset date, <u>through June 30, 2003</u>, the date last insured (20 CFR 404.1520(f)).

_____

continue to suffer from long-term mental and physical handicaps which will prevent her from working for any employer."  (Tr. at 373.)  On July 30, she opined that "Ms. Bica has been unable to work full-time since early 2003 . . . due to a combination of physical and psychiatric factors, including back and neck problems, as well as Major Depression, Obsessive-Compulsive Disorder, as well as difficulty with her cognition at times." (<u>Id.</u> at 411.)  Dr. Vonderheide's treatment notes, however, are not part of the record.

(Administrative Transcript (hereinafter "Tr."), at 12-15
(emphasis added).)  That is, the ALJ did not determine whether
Bica was disabled at the time of the hearing.


### Discussion

According to Bica, the ALJ's decision should be reversed,
and the case remanded, because the ALJ did not: (1) consider all
the medical evidence in the record; (2) properly develop the
record; (3) consider all of her impairments and their combined
effect on her ability to work; or (4) recognize and consider non-
exertional limitations in assessing her residual functional
capacity.  She further argues that the ALJ's decision is not
supported by substantial evidence.  The Commissioner disagrees,
categorically.


To be eligible for disability insurance benefits, a person
must: (1) be insured for such benefits; (2) not have reached
retirement age; (3) have filed an application; and (4) be under a
disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in
this case is whether the ALJ erred in determining that Bica was
not under a disability at a time when she was insured.


For the purpose of determining eligibility for disability
insurance benefits,

> [t]he term "disability" means . . . inability to engage
> in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment
> which can be expected to result in death or which has
> lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

In order to determine whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process. <u>See</u> 20 U.S.C. §§ 404.1520.

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform past
> relevant work, then the application is denied; 5) if
> the [claimant], given his or her residual functional
> capacity, education, work experience, and age, is
> unable to do any other work, the application is
> granted.

<u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 1520).

The claimant bears the burden of proving that she is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810–11) (D. Mass. 1982)).  Finally,

> In assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) plaintiff's subjective claims of pain and disability as supported by the testimony of the plaintiff or other witness; and (3) the plaintiff's educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

As noted, claimant advances five separate grounds for remanding this case.  One, however, is dispositive.  In support of her argument that the ALJ's decision is not supported by substantial evidence, Bica cites three cases from this district, along with Social Security Ruling 83–20, 1983 WL 31249 (S.S.A.), for the proposition that "if a question arises as to when the claimant's impairments become so severe as to render the claimant disabled, the ALJ should consult a medical expert."  (Clm't's Memo. of Law, at 14.)  In light of Moriarty v. Astrue, No. 07-cv-342–SM, 2008 WL 4104139 (D.N.H. Aug. 28, 2008), and Ryan v.

<u>Astrue</u>, No. 08-cv-17-PB, 2008 WL 3925081 (D.N.H. Aug. 21, 2008), claimant's argument carries the day.

SSR 83-20 points out that "[d]etermining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available."  1983 WL 31249, at *2.  This case presents just such a situation.  In her 2006 application, Bica claimed a 2003 onset date.  The record does include notes made by Bica's treating psychiatrist, Dr. Cusi, from 2001 through 2003, but Dr. Kalfas (Tr. at 296), Dr. Cadorette (<u>id.</u> at 341), the ALJ (<u>id.</u> at 32), and claimant's counsel (<u>id.</u>) have all commented on the illegibility of Dr. Cusi's notes, and Dr. Kalfas went even further, stating that those notes "do not provide sufficient information from which to ascertain the claimant's function during the period in question" (<u>id.</u> at 296).  Moreover, there are no appraisals, by medical professionals, of the impact of Bica's various impairments on her ability to perform work-related activities that are contemporaneous with the alleged onset date.  Finally, while Bica's counsel argued at the hearing that she had "five or six doctors agreeing that [Bica was] 100 percent disabled" at the time of the hearing (<u>id.</u> at 28), which was certainly enough to place Bica's current condition at issue, the ALJ did not determine whether Bica was disabled at the time

of the hearing, and, obviously, did not consult a medical expert to determine an onset date.  That was a legal error.

As Judge Barbadoro explained in <u>Ryan</u>, the fact that the ALJ did not determine whether Bica was disabled at the time of the hearing did not obviate the need to determine an onset date. Rather, the ALJ had an obligation first to address the issue of present disability and then, if necessary, establish the onset date.  2008 WL 3925081, at *7–*8.  This case may not involve medical conditions that are as obviously progressive as the claimant's Huntington's Disease in <u>Ryan</u>, but Bica's impairments have some commonalities with the claimant's mental illness in <u>Moriarty</u>.  Furthermore, Bica testified that she had suffered from headaches, depression, and anxiety since her youth (Tr. at 54–55), and the ALJ himself noted that "[m]ore recent medical records establish possible worsening in her medical condition," which reinforces the idea that Bica's impairments are, like those in <u>Ryan</u>, progressive in nature.  In sum, this case must be remanded so that the ALJ can determine, in the first instance, whether Bica is currently under a disability and then, if necessary, determine an onset date with the assistance of a medical expert.

## Conclusion

For the reasons given, claimant's motion to remand for a new administrative determination (document no. 11) is granted, and the Commissioner's motion to affirm his decision (document no. 12) is denied.  Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the ALJ for further proceedings.  The Clerk of the Court shall enter judgement in accordance with this order and close the case.


**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

November 9, 2009

cc:  Janine Gawryl, Esq.
     Robert J. Rabuck, Esq.